IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ENRIQUE UROZA,<br><br>               **Plaintiff,**<br><br>vs.<br><br>SALT LAKE COUNTY, et al.,<br><br>               **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:11CV713DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on the United States of America, Janet Napolitano, John Morton, Steven Branch, and Marshall Mathis's ("Federal Defendants") Motion to Dismiss.  The court held a hearing on the motion on November 15, 2012.  At the hearing, Plaintiff was represented by John Mejia, Kent Morgan, and Leah Farrell, the Federal Defendants were represented by Jessica Segall, and the County Defendants were represented by David Wayment. The court took the matter under advisement.  The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Because the court must accept all well-pleaded facts on a motion to dismiss, the following facts are taken from Uroza's Second Amended Complaint.  On June 13, 2012, Uroza, a 22-year old college student, appeared in Utah State Court to face criminal allegations.  The court set bail and remanded Uroza to Salt Lake County Metro Jail for processing.  Uroza was booked

into custody and posted bail ten minutes later.  When Uroza posted bail, there was no other lawful process that had been issued against Uroza that would have caused continued detention. Nevertheless, pursuant to County policy, the County Defendants continued to hold Uroza.

The following day, June 14, 2011, an Immigration Customs Enforcement ("ICE") agent interviewed Uroza at the SLC Metro Jail and then issued a hold request against Uroza.  This hold request was on a Form I-247, which requested SLC Metro Jail to "[m]aintain custody of the subject for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject."  The Form I-247 requested that SLC Metro Jail continue to detain Uroza because ICE has "initiated an investigation to determine whether this person is subject to removal from the United States."

After receiving ICE's "hold request," the County Defendants continued to detain Uroza. By its own terms, ICE's hold request expired on June 16, 2011, forty-eight hours after it was lodged.  Uroza, however, was not released despite having already posted bail.  Uroza was detained another thirty-six days.  Uroza moved the state court presiding over his criminal case to order the County Defendants to release him.  On July 21, 2011, five weeks after Uroza had posted bail, the State Court heard Uroza's motion and ordered him to be released from custody immediately.

Despite the State Court's ruling, the County Defendants did not release Uroza.  Defendant James Winder publicly stated that Salt Lake County would "continue to hold the inmate . . . until a federal judge orders his release or [ICE] removes the detainer it has placed on him."  Winder advised the press that he believed he was complying with ICE policy and practice by continuing

to hold Uroza after the hold request expired.

On July 22, 2011, thirty-nine days after he posted bail, the County released Uroza from custody and turned him over to Defendant Mathis, an ICE agent. Uroza asserts that he was turned over to ICE even though the state court judge ordered that the County should not turn him over to ICE.

Uroza alleges that it is the policy and practice of requesting local law enforcement agencies, like the County Defendants, to imprison individuals so that ICE can investigate the individual's immigration status. Form I-247 allows ICE agents to request local law enforcement agents to imprison people without stating probable cause for such detention: the one stated ground for a "hold request" on Form I-247 is that ICE is investigating whether an individual may be removed from the United States. Defendants Napolitano, Morton, and Branch approved the use of Form I-247.

Uroza also alleges that on June 16, 2011, when his Form I-247 expired, nobody from ICE went to SLC Metro Jail to acquire custody of him. Uroza claims that the Federal Defendants should have known that the County Defendants routinely kept individuals like Uroza in custody even if the ICE "hold request" had expired. An ICE agent did not come and place Uroza in ICE custody until July 22, 2011, thirty-six days later. On that day, Uroza was transported to an ICE detention facility in Spanish Fork, Utah. Uroza was held at the detention facility until July 24, 2011, without a hearing or an opportunity to post bail.

On July 25, 2011, ICE agents transported Uroza to Salt Lake City for a hearing before ICE Agent Jesus Padilla. At the hearing, Agent Padilla deemed Uroza eligible for bail, which was set and later lowered to $2,500. Uroza and his family raised the money and posted bail on

3

July 28, 2011.  Uroza is no longer in custody.

Uroza filed this case regarding the legality of Uroza's detention at the Salt Lake County Metro Jail, which he claims was unconstitutionally prolonged due to ICE's Form I-247.

## DISCUSSION

Uroza asserts five causes of action against the Federal Defendants: a declaratory judgment claim against the individually named Federal Defendants; a *Bivens* claim against each individually named Federal Defendant for violations of his Fourth and Fifth Amendment rights; a conspiracy claim against Defendants Branch and Mathis; and false imprisonment and negligence claims against the United States under the Federal Tort Claims Act ("FTCA").  The Federal Defendants move to dismiss all the causes of action Uroza asserts against them in the Second Amended Complaint.  The Federal Defendants raise the following issues in their Motion to Dismiss: (1) Uroza's declaratory judgment claim regarding the constitutionality of the Form I-247 is barred by sovereign immunity and fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6); (2) Uroza's *Bivens* claims against the individual federal defendants fails to state a claim and is barred by qualified immunity; (3) Uroza's conspiracy claim against Defendants Branch and Mathis under 42 U.S.C. § 1985(2) fails to state a claim for relief under Rule 12(b)(6); (4) Uroza's false imprisonment under the FTCA fails to state a claim for relief under Rule 12(b)(6); (5) Uroza's negligence claim is barred by the discretionary function exception and fails to state a claim for relief under Rule 12(b)(6).

### 1.  Fifth Claim for Relief

Uroza's fifth claim for relief seeks declaratory judgment that it violates the Fourth and Fifth Amendments to the United States Constitution for the Federal Defendants to use Form I-

4

247 to cause local law enforcement agents to detain people for 48 hours beyond the time they would otherwise be eligible for release for the sole reason that ICE is investigating whether the person should be removed from the United States.  The Federal Defendants argue that Uroza's declaratory judgment claim is barred by sovereign immunity and fails to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

### A.  Sovereign Immunity

The Federal Defendants argue that sovereign immunity bars Uroza's declaratory judgment claims because Uroza's Second Amended Complaint fails to assert a valid waiver of the federal government's sovereign immunity from suit.  *Loeffler v. Frank*, 486 U.S. 549, 554 (1988).  Generally, a plaintiff cannot pursue suit against the federal government absent a congressional waiver of immunity. *Block v. North Dakota*, 461 U.S. 273, 280 (1983).  General jurisdiction statutes, such as 28 U.S.C. § 1331, do not waive the government's sovereign immunity, nor does the declaratory judgment statute, 28 U.S.C. § 2201.  *See Lonsdale v. United States*, 919 F.2d 1440, 1443-44 (10th Cir. 1990); *New Mexico v. Regan*, 745 F.2d 1318, 1323 (10th Cir. 1984).

Uroza claims that this issue is governed by *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002), in which the court recognized two judicially created exceptions to the general bar against suits seeking relief from the federal government.  *Id.*  In *Wyoming*, the Tenth Circuit explained: "A court may regard a government officer's conduct as so 'illegal' as to permit a suit for specific relief against the officer as an individual if (1) the conduct is not within the officer's statutory powers or, (2) those powers, or their exercise in the particular case, are unconstitutional.  Absent these exceptions, sovereign immunity would unjustifiably protect

Government in the exercise of powers it does not possess." *Id.*   Based on these elements, Uroza

claims that (1) each Federal Defendant engaged in conduct beyond his or her statutory powers in

using or approving of the use of the Form I-247, and (2) even if his or her conduct had been

within his or her statutory grant of power, the statutory power itself is unconstitutional or its

exercise in this case was unconstitutional.

*(1) Conduct Not Within Statutory Powers*

 Uroza argues that the Federal Defendants do not have the statutory power to arrest

someone whenever they wish to investigate whether that person is removable for an immigration

offense.  The issuance of an immigration detainer is authorized by statute and regulation.  8

U.S.C. §§ 1226, 1357; 8 C.F.R. § 287.7.  In fact, the regulations allow "any authorized

immigration officer" to "issue a Form I-247."  8 C.F.R. § 287.7(a).  8 C.F.R. Section 287.7(a)

states that "[a]ny authorized immigration officer may at any time issue a Form I-247,

Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement

agency.  A detainer serves to advise another law enforcement agency that the Department seeks

custody of an alien presently in the custody of that agency, for the purpose of arresting and

removing the alien..  The detainer is a request that such agency advise the Department, prior to

release of the alien, in order for the Department to arrange to assume custody, in situations when

gaining immediate physical custody is either impracticable or impossible."

Uroza has not alleged that any named Federal Defendant is not an authorized immigration

officer. Uroza also concedes that each of the individually named Federal Defendants acted within

the scope of their official duties.  Therefore, if they were all acting within the scope of their

duties, then they were acting within their statutory powers when they approved and used the

Form I-247.  The court, therefore, finds no basis for concluding that any of the Federal Defendants acted outside their statutory powers.

*(2) Statutory Powers Unconstitutional*

The second exception under *Wyoming* allows a claim asserting that the exercise of a federal officer's statutory powers was unconstitutional.  Uroza argues that the approval and use of Form I-247 caused him to remain in jail after he posted bail on his state charges without a determination of probable cause and without due process.  Causing a "warrantless arrest without probable cause violates an arrestee's clearly established Fourth Amendment rights." *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007).  Moreover, Uroza asserts that the Federal Defendants' actions in approving and using Form I-247 to cause Uroza's detention after he posted bail violated Uroza's Fifth Amendment substantive due process rights.  *See Gaylor v. Does*, 105 F.3d 572, 576077 (10th Cir. 1997) (recognizing a clearly established substantive due process liberty interest in being freed from detention once bond has been set).  Finally, Uroza contends that Form-I-247 failed to provide him with any meaningful process before or during his time in physical custody with the County Defendants and ICE, violating his Fifth Amendment procedural due process rights.

Uroza contends that *Wyoming*'s second exception applies here to grant jurisdiction over the declaratory judgment claim because the Form itself exceeds statutory power.  The government cites several cases where the Form's use was considered constitutional.  The court finds no basis for concluding that the Form as a general matter exceeds statutory power in every instance.

Therefore, the issue is whether the issuance of the Form I-247 in this case exceeded

7

statutory powers.  Uroza's allegation against Janet Napolitano and John Morton is that they approved of the use of the Form in general.  Uroza makes no allegation that these defendants approved of the use of the specific Form issued against Uroza..  Therefore, the court concludes that Uroza has not alleged a claim against these Defendants that falls within the *Wyoming* exceptions.

With respect to the issuance of the I-247 in this particular case, Uroza alleges that it was issued against him with knowledge that he had already posted bail and with knowledge that the Salt Lake County Metro Jail would hold him in custody until ICE told them otherwise.  Uroza does not know of the exact agent in the ICE Salt Lake City Field Office who issued the detainer.  Defendant Branch, the Director of the ICE Salt Lake City Field Office, and Defendant Mathis, an ICE enforcement agent in the Salt Lake City Field Office, are the only specific individuals named from the Salt Lake office, but Uroza does not allege that they issued the detainer.  The detainer was issued by an unnamed ICE officer who interviewed Uroza while he was in the custody of Salt Lake County.  Mathis is alleged to have picked up Uroza after the detainer had expired and placed Uroza in ICE custody despite the fact that no current detainer was in place.

In the recent Supreme Court case reviewing Arizona's immigration law, the Court recognized that "[d]etaining individuals solely to verify their immigration status would raise constitutional concerns."  *Arizona v. United States*, 132 S. Ct. 2492, 2509 (2012).   The use of the Form allowed the detention of Uroza after he had posted bail.  There is a question of fact, however, as to whether the ICE officer who issued the detainer had probable cause or provided due process.  An immigration officer interviewed Uroza prior to issuing the Form I-247 in this case but the contents of that interview are not known.  Uroza asserts that there was no probable

cause but there is no way for the court to verify that assertion prior to discovery.

The court concludes that there is a sufficient basis under *Wyoming*'s second exception to allow Uroza's claim to proceed against the John Doe ICE officer who issued the detainer and Defendant Mathis. Uroza has alleged that the John Doe officer issued a detainer after Uroza had posted bail and without probable cause. Uroza has also alleged that Defendant Mathis placed Uroza in ICE custody without a valid detainer in place and without probable cause. When Mathis picked up Uroza from the Salt Lake County Metro Jail, the only issued detainer had expired several weeks before and a state court judge had directed Uroza's release, specifically stating that Salt Lake County should not turn Uroza over to ICE. Although it is possible that Mathis may have had probable cause to detain Uroza based on the information ICE obtained in its initial interview of Uroza, the contents of that interview are not before the court. Moreover, if the interview produced probable cause for Uroza's detention or arrest, Mathis should have been able to obtain a warrant for Uroza within the lengthy period of time in which Uroza was detained.

Uroza alleges that Defendant Branch is responsible for formulating and implementing policies applicable to detainers, but he does not allege that Defendant Branch's policies caused the detention in this particular case. There is no allegation that Branch was involved in or approved of the actions taken by the specific officers in this case even though he is their supervisor. Therefore, the court concludes that there is no assertion that Defendant Branch's exercise of his statutory powers was unconstitutional in this case.

**B. Rule 12(b)(6)**

Alternatively, the Federal Defendants assert that the court should dismiss Uroza's claim under FRCP 12(b)(6) because Uroza failed to sufficiently plead a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Federal Defendants contend that Uroza's conclusory allegations are no less deficient than the assertions in *Iqbal*.  *Id.*  Uroza, however, argues that his Second Amended Complaint gives the Federal Defendants notice that he is claiming that the *Wyoming* exceptions to sovereign immunity apply and he has articulated a clear factual basis on which this court may come to the legal conclusion that *Wyoming* applies to overcome sovereign immunity.  As stated above, the court concludes that Uroza's claims against the John Doe ICE officer who issued the detainer and Defendant Mathis are sufficiently pleaded to state a claim. Uroza has alleged that the officer issuing the detainer knew that Uroza had already posted bail, that the issuance of the detainer would cause the county defendants to hold Uroza until ICE requested his custody, and there was no probable cause based on the initial ICE interview.  Uroza also alleges that Defendant Mathis took custody of him when he had posted bail, there was no detainer in place, no warrant for his detention, and no known probable cause based on his initial interview with ICE.

In response to the Federal Defendants' argument that he cannot state a claim against them because he was in the physical custody of the County, Uroza argues that the technical question of which Defendant had custody of Uroza is not at issue.  Uroza contends that the Federal Defendants caused his detention, both at SLC Metro Jail and the ICE detention facility.  It is well established that a law enforcement officer is liable under the Fourth Amendment for effecting a seizure even if that officer does not personally take the subject into custody because an officer is "responsible for the natural consequences of his actions."  *Malley v. Briggs*, 475 U.S. 335, 344

10

n.7 (1986).

Accordingly, the court dismisses the fifth cause of action against Defendants Napolitano, Morton, and Branch.  However, the court denies the Federal Defendant's motion to dismiss the fifth cause of action as stated against Defendant Mathis and the John Doe ICE officer who issued the Form I-247 detainer against Uroza.

### 2. Fourth Claim for Relief  – *Bivens* Claim

### A. Rule 12(b)(6)

To establish a *Bivens* claim against a federal defendant, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 576 U.S. at 676.  Uroza cannot plausibly argue that he has stated a valid *Bivens* claim against Defendants Napolitano, Morton, and Branch.  Uroza's Second Amended Complaint lacks any degree of specificity about the actions of these individually named defendants to demonstrate that they were personally involved in or responsible for any of the alleged violations of his constitutional rights.  Uroza's factual allegations are conclusory and do not support an inference that high-level managers, such as Secretary Napolitano, ICE Director Morton, and Field Office Director Branch, were personally involved in Uroza's detention.

As stated above, however, the court concludes that Uroza has stated a claim that his constitutional rights were violated by Defendant Mathis and the John Doe ICE officer who issued the Form I-247 detainer against him.

### B. Qualified Immunity

The Federal Defendants assert that they are entitled to qualified immunity because they were acting within the statutory and regulatory framework.  Defendants are entitled to qualified

immunity as long as their alleged conduct did not violate a clearly established constitutional right at the time the conduct occurred.  *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2010).  Uroza asserts that the law he relies upon was clear and established at the time of Defendants' actions.  The proposition that immigration enforcement agents need probable cause to arrest pursuant to 8 U.S.C. § 1357(a)(2) and in accordance with the Fourth Amendment has been established in the Tenth Circuit since 1969.  *Roa-Rodriguez*. 410 F.2d at 1209).  In 1997, the Tenth Circuit also made clear that detainees who post bail should be set free in the absence of probable cause to detain them again or prolong their detention.  *Gaylor v. Does*, 105 F.3d at 576-77 (10th Cir. 1997).

The Federal Defendants cite to *Nasious v. Two Unknown BICE Agents*, 657 F. Supp. 2d 1218, 1223 (D. Colo. 2009) for the general proposition that any time ICE follows its procedures and issues a detainer, there is no constitutional violation.  But *Nasious* does not support such a general rule.  In *Nasious*, a plaintiff sued ICE agents after they issued, then later withdrew, a detainer on him while he was in jail on pending state charges.  *See id.*  In *Nasious*, there was no question that the detainer did not cause any prolongation of the plaintiff's detention because he was not otherwise eligible for release while the detainer was in effect.  *Id.*  The detainer in that case requested the county jail to notify ICE in the event the plaintiff was transferred to another facility.  In that context, the court concluded that "the ICE detainer could not, as a matter of law, constitute a restraint on or deprivation of a liberty interest upon which a due process violation could be premised."  *Id.*  At best, *Nasious*, stands for the proposition that when a detainer does not cause someone's prolonged detention, or seek to cause that detention, the detainer cannot be said to have violated the constitution.  In this case, the detainer was issued after Uroza posted

12

bail.

The court concludes that there is a question of fact as to whether Defendant Mathis and John Doe ICE officer are entitled to qualified immunity. There are questions of fact as to what information ICE received from Uroza in its initial interview with him. There are also questions of fact as to what the officers knew about the county's policy of holding individuals until ICE requested their custody. The facts asserted demonstrated that despite knowing that Uroza had posted bail, ICE made no attempt to take custody of him at the end of the 48-hour period of the detainer. These questions raise constitutional concerns and the court believes that they preclude the grant of qualified immunity at this stage of the proceedings. Accordingly, the court grants the Federal Defendants' motion to dismiss Uroza's fourth claim as to Defendants Napolitano, Morton, and Branch, and denies the motion as to Defendant Mathis and the John DO ICE Officer who issued the detainer in this case.

### 3. Sixth Claim for Relief – Conspiracy under 42 U.S.C. § 1985(2)

Uroza's sixth claim for relief alleges a conspiracy between County Defendants and Federal Defendants Branch and Mathis to deprive Uroza of his Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985(2). Uroza asserts that high level officials in Salt Lake County conspired to keep individuals with "Latino origin, race, or appearance and Spanish surname" in custody beyond the expiration of an immigration detainer. The Complaint alleges that Sheriff Winder "understood" that ICE wanted Uroza held.

The court concludes that Uroza has sufficiently alleged facts that could infer a conspiracy. Despite the fact that Uroza posted bail, the County retained custody of him until ICE could interview him. The John Doe ICE officer who interviewed Uroza knew that Uroza had already

13

posted bail, yet he still issued a Form I-247 detainer.  At the end of the 48-hour period of the

detainer, ICE did not attempt to take custody of Uroza.  Even after the state court judge ordered

that Uroza be released and not turned over to ICE, the County Defendants refused to release

Uroza until ICE took custody of him.  At that time, ICE took custody of Uroza without a warrant

and it alleged to be without probable cause, although it is unknown what information ICE had at

that time.   Uroza's conspiracy allegations relate to the agreements between the County and ICE

as to detainers for individuals, like Uroza, who are already detained at the jail.  Against Branch,

Uroza alleges that he agreed with the County Defendants to hold individuals indefinitely on the

basis of those individual's Latino origin, race, or appearance and surname.  As the supervisor of

the ICE Field Office, this agreement was a contributing cause of Uroza's detention, even if

Branch did not issue the detainer here.  Against Mathis, Uroza alleges that Mathis agreed with

the County Defendants to obtain physical custody of Uroza long after the 48-hour period

specified in the detainer against him based only on Uroza's Latino origin, race, appearance, and

surname.  The court concludes that these allegations are sufficient fr the claim to proceed.

Accordingly, the Federal Defendants' motion to dismiss Uroza's sixth cause of action is denied.

### 4.  Seventh Claim for Relief – False Imprisonment under FTCA

Uroza's seventh claim for relief asserts a claim for false imprisonment against the United

States under the Federal Tort Claims Act ("FTCA").  The Federal Defendants argue that this

claim fails because Uroza has not established that the Federal Defendants were responsible for

any alleged unlawful detention.  While ICE admittedly issued a detainer request, Uroza was

neither arrested nor initially detained by ICE.  The detainer request specified that Uroza remain

in custody for no longer than 48 hours.  The Federal Defendants argue that ICE was not

responsible for Uroza's detention prior to July 22, 2011.  At that time, Uroza was processed and granted bond on the next business day.

Uroza argues that the Federal Defendants erroneously claim that he was not in ICE's physical custody while in the SLC Metro Jail and that his time in ICE's physical custody was lawful.  Under Utah tort law, a party need not personally cause false imprisonment to be liable for it.  *Pixton v. Dunn*, 238 P.2d 408, 408-09 (Utah 1951) ("It is sufficient if the circumstances developed by the plaintiff support an inference that the defendant was the directing or instigating force of the illegal arrest.").   Because Form I-247 and other actions by federal defendants are alleged to be the directing causes of Uroza's detention, the United States can be held liable for Uroza's allegedly false and unlawful imprisonment at SLC Metro Jail.  Also, the United States has not established that it was lawful for ICE to take physical custody of Uroza on July 22.  Accordingly, the court denies the Federal Defendant's motion to dismiss Uroza's seventh cause of action.

### 5.  Eighth Claim for Relief – Negligence

Uroza's eighth claim for relief alleges negligence against the United States based on Uroza's prolonged detention at the SLC Metro Jail.   The Federal Defendants argue that the court should dismiss this claim because the court lacks subject matter jurisdiction over it and because Uroza fails to state a cognizable negligence claim.

### A.  Discretionary Function Exception

Although a court can hold the United States liable in tort, the discretionary function exception preserves the United States' sovereign immunity from negligence claims.  28 U.S.C. § 2680(a).  The "discretionary function exception poses a jurisdictional prerequisite to suit, which

the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998). The discretionary function exception extends to action in the government's "role as a regulator of the conduct of private individuals," as well as other administrative actions such as the "execution of a Federal project." *Garcia v. United States Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008).

To determine whether the exception applies, the court must consider: (1) whether "the precise governmental conduct at issue" was "a matter of judgment or choice for the acting employee;" and (2) "whether the decision in question is one requiring the exercise of judgment based on considerations of public policy." *Id.* The focus is "on the nature of the actions taken and whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).

The Federal Defendants argue that the issuance of an immigration detainer is a matter of judgment or choice for the acting employee. The Federal Defendants claim that because ICE need not issue a detainer for every individual suspected of an illegal presence in the United States, the issuing officer must exercise judgment and discretion in accordance with public policy. Uroza argues that the issuance of a detainer is not discretionary because ICE officers do not have discretion to violate the constitution and federal statute. *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 275 (D. Conn. 2008) (rejecting discretionary function argument related to investigatory detention because "[g]overnment agents never have the discretion to violate the Constitution."). The second prong of the exception–that these decisions implicate the kind of public policy considerations animating the rule–is not applicable in this case. The Second Circuit has ruled that immigration agents' actions in issuing detainers are not

16

covered by the discretionary function exception because these actions "are not the kind that involve weighing important policy choices." *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982). The court agrees that the discretionary function exception does not bar Uroza's negligence claim in the circumstances alleged.

## B. Rule 12(b)(6)

Even if this court determines that sovereign immunity does not bar Uroza's negligence claim, the Federal Defendants argue that Uroza has failed to plead a cognizable negligence claim because Uroza does not establish that the Federal Defendants were the actual, rather than the proximate, cause of his alleged unlawful detention past the expiration of the immigration detainer, or that any particular Federal Defendant overtly acted to cause the alleged unlawful detention. The court has already addressed the fact that, under Utah law, the United States can be liable for unlawful imprisonment if it was a directing or instigating force of the arrest. Uroza sufficiently alleges facts that Federal Defendants caused his detention. Uroza also alleges that the Federal Defendants assisted the County Defendants in violating the State Court order that he be released and not turned over to ICE. Accordingly, the court denies the Federal Defendants' motion to dismiss Uroza's eighth claim for relief.

## CONCLUSION

Based on the above reasoning, the Federal Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The Fifth Claim for Relief is dismissed against Defendants Napolitano, Morton, and Branch, but not against Defendant Mathis and the John Doe ICE officer who issued the Form I-247. The Fourth Claim for Relief is dismissed against Defendants Napolitano, Morton, and Branch, but not against Defendant Mathis and the John Doe ICE officer

who issued the Form I-247.  The Federal Defendants' motion to dismiss is DENIED as to the

Sixth, Seventh, and Eighth Claims for Relief.

DATED this 21st day of February, 2013.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge