IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ENRIQUE UROZA,<br><br>     Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY, et al.,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PROTECTIVE ORDER (ECF No. 71)**<br><br>Case No.  2:11-cv-713-DAK-EJF<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Enrique Uroza filed a Motion for Protective Order that seeks to prevent Defendants from inquiring into certain topics at his deposition.  (ECF No. 71.)  Specifically, Mr. Uroza asks this Court to prevent Defendants from inquiring into: "(i) Mr. Uroza's immigration status; (ii) the immigration status of his friends and/or family; (iii) any tax returns; (iv) any employment; (v) any entry [into] the United States; and (vi) any acts he undertook that led to criminal proceedings against him." (Mem. Supp. 1, ECF No. 71.)  The Court[1] has carefully considered the Motion and Memoranda submitted for and against Mr. Uroza's Motion.[2]  For the reasons set forth below, but primarily because the discovery sought has marginal if any relevance, in light of the potential chilling effect of the disclosure, the Court GRANTS Mr. Uroza's Motion.

---

[1] On August 6, 2013, District Judge Dale A. Kimball referred this case to Magistrate Judge Evelyn J. Furse under 28 U.S.C. § 636(b)(1)(A).  (ECF No. 72.)

[2] The Court determined it could decide the Motion based on the briefing and does not need oral argument.  *See* DUCivR 7-1(f).

**BACKGROUND**

Mr. Uroza filed this action against the United States of America; Salt Lake County; Salt Lake County Sheriff James Winder in his official capacity; and ICE agents or directors Jordan Reddish, Steven Branch, Robert Cordero, and Marshall Mathis, in their individual capacities,[3] for allegedly conspiring pursuant to an "undisclosed custom" to detain him illegally, (*id.* at ¶ 71); violating his freedom from unreasonable seizures, his right to Due Process, and his right to bail; in addition to negligence and false imprisonment, (*id.* at ¶¶ 90–106, 110–121).  Mr. Uroza also seeks a declaratory judgment finding ICE's forty-eight hour hold request form violative of the Fourth and Fifth Amendments to the United States Constitution.  (*Id.* at ¶¶ 107–109).

According to the Complaint, this lawsuit followed Mr. Uroza's arrest and detention after missing state court hearings.  (Third Am. Compl. ¶ 62, ECF No. 94.)  Unaware of the arrest warrants, Mr. Uroza appeared at his next scheduled hearing on June 13, 2011, when the court remanded Mr. Uroza to the Salt Lake County Metro Jail (the "County Jail") and set bail at $5,000.  (*Id.*)  Mr. Uroza's family posted the necessary bail later that day.  (*Id.* at ¶ 63.)

After Mr. Uroza's family posted bail and while he remained in custody at the County Jail, a County Jail officer allegedly asked Mr. Uroza where he was born, to which Mr. Uroza responded "Mexico."  (*Id.* at ¶ 65.)  The County Jail then placed Mr. Uroza on a mandatory forty-eight hour hold.  (*Id.*)  The County Jail officer told Mr. Uroza she placed him on hold because he was not born in the United States.  (*Id.*)   The next day, on June 14, 2011, ICE officer Jordan Reddish briefly interviewed Mr. Uroza and told him that, "after 48 hours, you are good to go."  (*Id.* at ¶ 67.)  At 6:08 p.m. that day Mr. Reddish issued an I-247 immigration detainer against Mr. Uroza,  (*id.* at ¶ 69), requesting the County Jail maintain custody of Mr. Uroza to

---

[3] This list includes only those Defendants Mr. Uroza identifies in his Third Amended Complaint.  (ECF No. 94.)

allow ICE to assume custody of Mr. Uroza, (*id.* at ¶ 34). The detainer expired by its own terms forty-eight hours later, at 6:08 p.m. on June 16, 2011. (*Id.* at ¶ 71.)

The Complaint alleges the County Jail did not release Mr. Uroza upon the detainer's expiration, however. Instead, the State Court ordered Mr. Uroza's release on July 21, 2011, after Mr. Uroza challenged his detention. (*Id.* at ¶¶ 73, 76.) Despite the order for his release, on July 22, 2011, ICE took custody of Mr. Uroza, (*id.* at ¶ 82), and ultimately set another bond at $2,500, (*id.* at ¶ 84). ICE finally released Mr. Uroza on July 28, 2011, when he posted bail. (*Id.* at ¶ 85.)

## DISCUSSION

As an initial matter, parties may conduct discovery on "any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Certainly, discovery into matters not relevant to the case impose an undue burden. *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008) (finding two topics of a 30(b)(6) notice irrelevant and granting a protective order as to those topics). A protective order may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). The party seeking the protective order bears the burden of showing good cause. *McBride*, 250 F.R.D. at 583 (citation omitted). "To establish good cause, the moving party must offer 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)); *see also S.E.C. v. Dowdell*, 144 F. App'x 716, 723 n.2 (10th Cir. 2005). However, when a discovery request does not have patent relevance, the party seeking discovery has the burden to show relevancy. *McBride*, 250 F.R.D. at 587. "Whether to enter a protective order lies within the court's discretion." *Id.* at 583.

**I. Immigration Status**

In support of this Motion, Mr. Uroza largely relies upon the District of Connecticut's decision in *Barrera v. Boughton*, No. 3:07cv1436 (RNC), 2010 WL 1240904 (D. Conn. Mar. 19, 2010).  In *Barrera*, Danbury police officers and United States Immigration and Customs Enforcement ("ICE") agents arrested the plaintiffs, Latino day laborers, for immigration violations during a sting operation.  *Barrera,* 2010 WL 1240904, at *1.  The plaintiffs alleged the officers improperly targeted them because of their "race, ethnicity and perceived national origin" and brought suit under the United States and Connecticut Constitutions.  *Id.*  The plaintiffs sought "a protective order that they not be compelled to disclose information bearing on immigration status or alienage."  *Id.* at *2.

The *Barrera* court first determined immigration status and alienage lacked relevance to any of the plaintiffs' claims and defenses.  *Id.* at *3–4.  For example, the court found the plaintiffs' immigration status and alienage irrelevant to whether the defendants had a lawful basis to detain or arrest the plaintiffs because "immigration status and alienage is not probative of facts the defendants knew at the time of detention or arrest and therefore . . . is not relevant to whether the defendants had reasonable suspicion or probable cause."  *Id.* at *4.

The *Barrera* court next considered whether the defendants could justify such discovery requests as a means for obtaining impeachment evidence.  *Id.* at *4–6.  The court identified a number of cases where courts prevented inquiry into parties' immigration status and alienage, and ultimately held that "whatever value the information might hold as to impeachment is outweighed by the chilling and prejudicial effect of disclosure."  *Id.* at *5.

Here, Mr. Uroza argues such inquiries are oppressive and that the lack of relevancy "deprives the questioning of any countervailing justification."  (Reply 2–3, ECF No. 75.)  The Court agrees.

Many courts that have considered this issue have reached conclusions similar to *Barrera*. For example, the Ninth Circuit Court of Appeals affirmed a protective order "bar[ring] discovery into each plaintiff's immigration status on the basis that allowing [the defendant] to use the discovery process to obtain such information would chill the plaintiffs' willingness and ability to bring civil rights claims." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004). *See also Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1236 (D. Colo. 2012) (denying motion to compel and noting that facial overbreadth of discovery requests at issue supported plaintiff's claim that "request regarding his previous immigration status is a calculated attempt . . . to intimidate and harass him"); *Sanchez v. Creekstone Farms Premium Beef, LLC*, No. 11-4037-KGG, 2011 WL 5900959, at *3 (D. Kan. Nov. 23, 2011) (noting "federal courts have routinely disallowed discovery related to immigration status of plaintiffs bringing claims under the FLSA").

Nonetheless, some courts have found immigration status discoverable.  For example, the District of Colorado permitted discovery related to the plaintiffs' immigration status in a human trafficking case where the defendant had a "compelling need" for the requested discovery, which had relevance to claims, affirmative defenses, and damages. *Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-CV-00772-MSK-MJW, 2012 WL 5931716, at *2 (D. Colo. Nov. 27, 2012). The District of South Carolina similarly allowed discovery of immigration status where the requested discovery related to the plaintiff's past and future wage loss damages claim and the defendant's defense. *Fragoso v. Builders FirstSource Se. Grp. LLC*, No. 4:10-503-TLW-SVH,

2011 WL 767442, at *2 (D.S.C. Feb. 25, 2011).  Courts that have permitted such discovery have
sometimes found that a protective order can protect the responding party's privacy.  *See Camayo*,
2012 WL 5931716, at *2 (finding that "any *in terrorem* effect of disclosure of such information .
. . can be addressed by this court with an Order restricting the use of such information"); *Catalan
v. Vermillion Ranch Ltd. P'ship*, No. CIV.A. 06-CV-01043WY, 2007 WL 951781, at *2 (D. Colo.
Mar. 28, 2007) (finding "the privacy interests that Plaintiffs have in the requested discovery can
be protected and limited in use through a protective order").

   *i. Mr. Uroza's Immigration Status*

   Here, Defendants argue Mr. Uroza's immigration status has relevance to his claim for
compensatory damages.  (Mem. Opp'n 4–9, ECF No. 74.)  In response to a damages
interrogatory, Mr. Uroza stated that after his imprisonment "his ability to concentrate diminished
and his academic productivity dropped, eventually causing him to lose his scholarship."  (*Id.* at
5.)  Defendants therefore presume Mr. Uroza seeks compensatory damages on the basis that his
detention impaired his ability to work.  (*Id.*)  Because immigration status may affect the
availability of such compensatory damages, Defendants argue the Court should allow them to
inquire into Mr. Uroza's immigration status.  In his Reply, however, Mr. Uroza denies that he
seeks compensatory damages based on lost employment.  (Reply 1, ECF No. 75.)  The Court will
hold Mr. Uroza to this statement and on this basis finds his immigration status irrelevant to his
claim for compensatory damages.[4]

---

   [4] Defendants concede that if Mr. Uroza does not seek damages from lost employment
then his employment history may lack relevance to the proceedings.  (Mem. Opp'n at 5 n.2, ECF
No. 74.)

*ii. Mr. Uroza's Friends and Family*

Mr. Uroza also seeks a protective order preventing Defendants from asking questions about Mr. Uroza's friends and family's immigration status.  Defendants claim this information has relevance to assessing the credibility of the friends and family members as potential witnesses and to reveal possible impeachment evidence.  (Mem. Opp'n 8, ECF No. 74.)  Many courts have noted that "a witness's credibility is always at issue and may be tested in a variety of ways without imposing an undue burden on a party."  *Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 192 (S.D.N.Y. 2006) (citation omitted).  Defendants may probe potential witnesses' credibility through "properly limited and narrowly tailored examination in deposition and at trial . . . without opening broader collateral issues pertaining to . . . immigration status." *Id.*  Given the variety of ways Defendants could choose to test non-party witness credibility, the Defendants' desire to inquire into the immigration status of Mr. Uroza's friends and family raises the specter of intimidation.

In entering protective orders preventing inquiry into a party's immigration status, courts have recognized the risk of intimidation.  *See, e.g.*, *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (recognizing risk of intimidation).  Courts have also recognized that allowing such discovery may discourage individuals from acting to vindicate rights.  *See Rivera*, 364 F.3d at 1065 ("The chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest.").  Simply treating discovery relating to immigration status as confidential—as Defendants offer to under this Court's standard protective order—does not cure this potential chilling effect.  *See Sandoval v. Rizzuti Farms, Ltd.*, No. CV-07-3076-EFS, 2009 WL 959478, at *2 n.2 (E.D. Wash. Apr. 7, 2009) (finding that confidential treatment of discovery related to immigration status would not mitigate chilling effect); *Liu*, 207

F. Supp. 2d at 193 (same).  These concerns have special relevance here, where Mr. Uroza has

sued agents of the federal agency charged with immigration enforcement and the United States

for violations of the United States Constitution.[5]

The intimidation and chilling effect of allowing inquiry into immigration status outweigh

the Defendants' interest in using this particular line of inquiry to test credibility and seek possible

impeachment evidence regarding Mr. Uroza's friends and family.  *Rivera*, 364 F.3d at 1065

(recognizing chilling effect if discovery could reveal immigration problems of friends or family).

Thus, the Court finds good cause exists to protect the immigration status of Mr. Uroza's friends

and family from inquiry at Mr. Uroza's deposition.  *See David*, 2013 WL 6234592, at *1 (noting

magistrate judge's entry of a protective order that protected immigration status of plaintiffs'

families).

## II. Tax Returns & Employment

Mr. Uroza also seeks protection of his tax returns and employment history from

discovery.  The Tenth Circuit has held that "[t]ax returns are not generally discoverable."

*Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974).  An exception to this rule applies

"only when the plaintiff's income is directly in issue."  *Id.*  Mr. Uroza has stated he does not and

will not seek compensatory damages based on lost income.  (Reply 1, ECF No. 75.)  Because

Mr. Uroza has not placed his income directly at issue, the exception does not apply.

Defendants concede that "[i]f Uroza's damages claims do not stem from or relate in any

way to lost employment or employment opportunities either during his detention or thereafter,

then Uroza's employment history may, in fact, be irrelevant to these proceedings."  (Mem.

---

[5] Defendants offhandedly assert, by way of one sentence in the Opposition, that the *in terrorem* effect of inquiries into immigration status cannot outweigh Defendants' right to confront witnesses.  (Mem. Opp'n 9, ECF No. 74.)  This Court follows others and disagrees.  *See David v. Signal Int'l, LLC*, No. 08-1220, 2013 WL 6234592, at *2 (E.D. La. Dec. 2, 2013).

Opp'n 5 n.2, <u>ECF No. 74</u>.)  As noted above, Mr. Uroza does not seek employment-related damages.  Thus, Mr. Uroza's employment history and tax returns lack relevance and allowing discovery thereof would unduly burden Mr. Uroza.  Accordingly, the Court finds good cause exists to protect Mr. Uroza from discovery related to his tax returns and employment history.

### III. Entry into the United States

Mr. Uroza argues this Court should prevent Defendants from asking new questions about Mr. Uroza's entry into the United States because Defendants may not create probable cause post hoc and thus lack relevance.  (Mem. Supp. 6–7, <u>ECF No. 71</u>.)  On this basis Mr. Uroza does not challenge questions about the period of his detention from June 13, 2011 to July 28, 2011.  (*Id.* at 6.)  Nor does Mr. Uroza challenge Defendants' ability to ask him about questions Defendants posed to him and his answers thereto during that time.  (*Id.*)  Defendants assert that their inquiry is not limited to what they knew at the time of detention but offer no case law or explanation to support the assertion.  (Mem. Opp'n 9, ECF No. 74.)

The Court agrees with Mr. Uroza that answers to questions not originally asked lack relevance to this case.  Mr. Uroza claims unlawful detention and violation of due process.  The District Court has already acknowledged that a factual issue exists "as to whether the ICE officer who issued the detainer had probable cause or provided due process."  (Mem. Dec. 8, ECF No. 46.)  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted).  Moreover, "detainees who post bail should be set free in the absence of probable cause to detain them again or prolong their detention."  (Mem. Dec. 12, ECF No. 46 (citing *Gaylor v. Does*, 105 F.3d 572, 576–77 (10th Cir. 1997).)  Accordingly, Defendants may not ask Mr. Uroza about any entry into the United States except to the extent they

questioned him on this subject originally.  Even so, Defendants must limit their inquiry into the subject to the questions posed during that time and the answers Mr. Uroza provided.

Moreover, the Court notes Mr. Uroza's entry into the United States could implicate his immigration status.  The reasons discussed above for precluding inquiry into Mr. Uroza's immigration status therefore lend further support to precluding this line of inquiry.

### IV. Acts Prior to Arrest

Lastly, Mr. Uroza asks this Court to preclude Defendants from asking about the events leading up to his state arrest and charges.[6]  (Mem. Supp. 7, ECF No. 71.)  Defendants argue they should have the freedom "to fill in holes that support their showing of probable cause."  (Mem. Opp'n 11, ECF No. 74.)  However, as discussed above, probable cause rests on the facts known at the time of the arrest.  *Devenpeck*, 543 U.S. at 152.  Accordingly, Defendants' stated desire "to fill in holes that support their showing of probable cause" cannot create a basis for relevance. Defendants offer no other basis for relevance of this inquiry.  Absent relevance, the discovery poses an undue burden.  The Court thus finds good cause exists to protect Mr. Uroza from questions about the events leading to his state arrest and charges.[7]

### CONCLUSION

For the reasons set forth above, the Court GRANTS Mr. Uroza's Motion (ECF No. 71). The Court precludes Defendants from inquiring into the following subjects during Mr. Uroza's deposition: (1) Mr. Uroza's immigration status; (2) the immigration status of Mr. Uroza's friends and family; (3) Mr. Uroza's tax returns; (4) Mr. Uroza's employment history; (5) Mr. Uroza's

---

[6] Mr. Uroza does not contest the relevancy of the state charges against him, his arrest on those charges, his posting of bail, and any convictions involving dishonesty or false statements. (Mem. Supp. 7, ECF No. 71.)

[7] This Order does not preclude inquiry about what Defendants knew about the events leading to the state arrest and charges at the time of detention.

entry into the United States; and (6) the events leading up to Mr. Uroza's state arrest.  If, however, a compelling need justifying inquiry into one of the above-listed subjects arises at a later time, and such discovery would become relevant, Defendants may file an appropriate motion with the Court.

Dated this 20th day of February, 2014.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge