Alfred C. Pfeiffer, Jr. (admitted *pro hac vice*)
Alan J. Devlin (admitted *pro hac vice*)
Charles F. Taylor (admitted *pro hac vice*)
Kyle A. Virgien (admitted *pro hac vice*)
Danielle A. Kendrick (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: 415-391-0600
Facsimile: 415-395-8095
al.pfeiffer@lw.com
alan.devlin@lw.com
charles.taylor@lw.com
kyle.virgien@lw.com
danielle.kendrick@lw.com

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone: 801.521.9862
Facsimile: 801.532.2850
aclu@acluutah.org

B. Kent Morgan (Bar No. 3945)
DYER LAW GROUP PLLC
136 S. Main Street, Suite 221
Salt Lake City, Utah 84101
Telephone: 801.363.5000
Facsimile: 801.363.5051
kent@dyerlawgroup.com

*Attorneys for Plaintiff Enrique Uroza*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| ENRIQUE UROZA,<br><br>       Plaintiff,<br>v.<br><br>SALT LAKE COUNTY, *et al.*,<br><br>       Defendants. | Case No. 2:11-cv-00713-DAK-EJF<br><br>**DECLARATION OF ALAN J. DEVLIN IN SUPPORT OF PLAINTIFF ENRIQUE UROZA'S RULE 56(d) MOTION TO DENY OR CONTINUE MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS BRANCH, CORDERO, MATHIS, AND REDDISH IN THEIR INDIVIDUAL CAPACITIES**<br><br>Judge Dale A. Kimball<br>Magistrate Judge Evelyn J. Furse |

I, Alan J. Devlin, hereby declare as follows:

1.I am an attorney duly licensed to practice law in the State of California, and am an associate with the law firm of Latham & Watkins LLP. This Court has admitted me *pro hac vice* to represent Plaintiff Enrique Uroza in the above-titled action. I submit this declaration in support of Mr. Uroza's Rule 56(d) Motion to Deny or Continue Defendants Branch, Cordero, Mathis, and Reddish's Motion for Summary Judgment.

2.I have personal knowledge of the information set forth below, and am competent to address the specific factual matters relating to Mr. Uroza's objection under Federal Rule of Civil Procedure 56(d).

3.Mr. Uroza brings a *Bivens* claim against Defendants Reddish, Cordero and Mathis for depriving him of his Fourth and Fifth Amendment rights. Mr. Uroza alleges that Defendant Reddish unconstitutionally caused his seizure by issuing a Form I-247 immigration detainer against him where he lacked probable cause as to his immigration status and flight risk. (TAC, Dkt. 94, ¶¶ 10, 27, 67-70, 104-106.) The *Bivens* claims against Defendants Mathis and Cordero allege that those defendants caused Mr. Uroza's detention after the state court had ordered him released, even though they knew or learned that ICE had issued the I-247 detainer then holding him without probable cause as to both immigration status and flight risk. (*Id.* ¶¶ 29-30, 79-80, 104-106.) Mr. Uroza also alleges, pursuant to 42 U.S.C. § 1985, that County and Federal Defendants conspired against people of Latino national origin, race, ethnicity, or appearance, or who had a Spanish surname, such that: County Defendants would deny them bail and send their booking sheets to ICE based on perceived Hispanic ethnicity; Defendants would issue I-247 detainers without first investigating probable cause as to immigration status and flight risk; the

conspirators would disobey orders of release; and County Defendants would hold subjects of I-247 detainers until ICE decided what to do with them. (TAC, Dkt. 94, ¶¶ 28-30, 43, 58-60, 77, 110-13.)

4. Federal Defendants have moved for summary judgment on these claims. Defendants challenge Mr. Uroza's *Bivens* claim on the ground that each of the Defendants had "probable cause to suspect that Uroza was here unlawfully and was therefore deportable." (Def. Br., Dkt. 108, pp. 22-33.) As to conspiracy, they argue that: (1) Mr. Uroza's allegations are implausible; (2) the undisputed facts show that Defendants were not motivated by race; and (3) they enjoy qualified immunity. (*Id.* pp. 18-21.)

5. Defendants' motion is improper. Mr. Uroza has yet to depose Defendants, who cannot move for summary judgment based on untested assertions about their knowledge and state of mind. Mr. Uroza, therefore, files a Rule 56(d) Motion and this accompanying Declaration to explain why he must depose each named Defendant to "present facts essential to justify [his] oppositions." Fed. R. Civ. P. 56(d).

**Denied the Opportunity to Question Defendants about their Untested Declarations, <u>Mr. Uroza Cannot Present Facts Essential to Justify his Opposition</u>**

6. Defendants base their summary-judgment motion on their own declarations. They purport to establish "undisputed" facts concerning their own knowledge, intent, and state of mind. That information, as in most conspiracy cases, is uniquely within their control. To allow a defendant plausibly accused of conspiring unilaterally to establish undisputed facts based only on his unscrutinized assertion would make it impossible for victims of conspiracy and other civil-rights violations to bring successful actions.

7. That is why deposition testimony is necessary. A plaintiff must be able to probe

declarations of innocence, to examine the facts underlying those assertions, to expose the limits of the defendant's knowledge, and above all to secure concessions that render unilateral denials of wrongdoing implausible.

8. Mr. Uroza's *Bivens* and conspiracy claims rest, to a significant degree, on Defendants' state of mind. As I explain below, Mr. Uroza needs to depose Defendants to unearth essential information with which to attack their denials. First, though, I explain that a ghostwriter appears to have written the declarations, which are themselves conclusory. That fact raises a great many questions for deposition, and the information thus obtained may fatally compromise the reliability of the declarations on which Defendants move for summary judgment.

*Bivens*:

9. Many issues of fact remain on Mr. Uroza's *Bivens* claim, including questions regarding the general procedure for determining probable cause with respect to I-247 detainers and what constitutes probable cause, whether probable cause existed at the time Defendant Reddish issued Mr. Uroza an I-247 detainer on both immigration status and flight risk, and whether Defendants Mathis and Cordero adequately determined there was probable cause as to immigration status and flight risk.

10. As set forth in their declarations, each Defendants states in identical or almost-identical terms: "None of the ICE Employees is aware of an ICE agent or official in Salt Lake City ever issuing an I-247 detainer for someone held in SLC Metro Jail before determining probable cause existed to believe the inmate was subject to removal proceedings," and further that "[n]one of the ICE Employees is aware of an ICE agent or official in Salt Lake City ever soliciting or causing local law enforcement to jail people without probable cause through the use

3

of I-247 detainers[.]" (Def. Br., Dkt. 108, p. 5, ¶¶ 4,5.) Yet, the evidence already obtained shows that ICE issued I-247 detainers against at least 35 U.S. citizens in Salt Lake County within a four-month span. (SLCo Uroza 179, 210, 220, 231, 240, 244-45, 249-50, 259, 270-71, 279, 294-95, 302, 303, 308, 327, 364, 373, 394, 402, 412, 417, 419, 441, 459, 461, 884, 892, 917, 928-29, 950, 961, 963-64, 973, 982, 992, Ex. 1.) At least 29 of those 35 U.S. citizens were of Hispanic origin, race, ethnicity, or appearance. (*Id.*) There are two explanations for that phenomenon: either ICE did not undertake an adequate investigation prior to serving those detainers or there was a conspiracy afoot to target Hispanic inmates. Additionally, the language of the I-247 detainer in use from 2010 through 2011 is inconsistent with this assertion, stating only that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States" and not that any determination on removability has been made. (SLCo Uroza 11, Ex. 2.)

11. There are also questions of fact as to what formed the basis for Defendant Reddish, Mathis and Cordero's separate determinations that probable cause existed to believe Mr. Uroza did not have valid immigration status and that he was a flight risk. Defendant Reddish states he investigated Mr. Uroza's status prior to interviewing him, and that along with the answers that Mr. Uroza provided during the interview, Reddish was satisfied that there was probable cause. (Def. Br., Dkt. 108, pp. 8-9, ¶¶ 20-24.) These facts directly contradict Mr. Uroza's allegations, and Mr. Uroza intends to depose Defendant Reddish to test these assertions.

12. As to Defendants Mathis and Cordero, although they both stated they made individual determinations that Defendant Reddish had probable cause to lodge the I-247 detainer (Def. Br., Dkt. 108, ¶¶ 34, 47), neither set forth the basis for these conclusions. Further,

Defendant Cordero stated that he determined that probable cause existed to detain Mr. Uroza on July 22, 2011, "independent of whether an I-247 detainer had previously been filed," yet he did not provide the basis for reaching that conclusion. (Def. Br., Dkt. 108, ¶ 4.) Asserting probable cause is inadequate. Mr. Uroza must depose Defendants Mathis and Cordero about the basis for their purported conclusions.

13.     Their brief suggests that Defendants Reddish, Mathis, and Cordero did not assess Mr. Uroza's flight risk until at least Cordero analyzed what he considered to be the appropriate bond amount on July 25, 2011. (Def. Br., Dkt. 108, pp. 26-27; Cordero Decl., Dkt. 108-2, ¶ 28.) In fact, "each defendant admits that flight risk was not a significant factor in determining probable cause . . . . Therefore, each defendant admits that an investigation into flight risk was not routinely completed prior to issuing a detainer." (RFA Resp. No. 10, Ex. 3.) Cordero specifically found that Mr. Uroza was not a flight risk. (Def. Br., Dkt. 108, p. 15, ¶ 50.) Yet, it does not seem that he included this within his probable cause determination. Mr. Uroza needs to depose Defendants regarding the determination of flight risk, and the extent to which they rely on perceived likelihood of escape in issuing I-247 detainers and in later taking the subjects of those detainers.

14.     Defendants Reddish, Cordero, and Mathis claim to "ha[ve] been extensively trained in Fourth and Fifth Amendment law, including issues related to probable cause[.]" (Def. Br., Dkt. 108, pp. 7-13, ¶¶ 18, 28, 41.) This assertion raises a great many questions about the nature of their training, the extent and limits of their knowledge of Fourth and Fifth Amendment law, and their familiarity with, exposure to, and reliance on the statutory provisions that grant them authority to arrest in certain circumstances.

5

**Conspiracy**:

15.     Additionally, there remain critical factual questions bearing on Mr. Uroza's conspiracy claim. These questions include: (i) Defendants' knowledge of, and involvement with, County Defendant's SB 81 policy; (ii) Defendants' contacts with Salt Lake County after they issue I-247 detainers, but while an inmate remains in jail; (iii) the communications that occurred with respect to Mr. Uroza after Defendant Reddish caused ICE to issue a detainer on June 14, 2011 and before the court order of release on July 21, 2011; (iv) Salt Lake County's practice of holding detainees more than two business days past the County's first notice to ICE of the detainee's impending release; (v) especially the conversations that took place on July 22, 2011 between Defendant Mathis, Defendant Cordero, and County officials; and more besides.

16.     Defendants' declarations contradict other evidence. Each Defendant states that "[n]o ICE Employee had any conversations with one another or with any County Defendant regarding SLC Metro Jail's SB 81 policy, its applicability to Uroza, or its constitutionality[.]" (Def. Br., Dkt. 108, p. 7, ¶ 14.) Specifically, Defendant Branch states that he "did not consult at any point with any state or county official regarding SB 81 or any pending legislation" and, in June and July of 2011, he was "not aware of the County's SB 81 policy" and "had no conversations with any County personnel regarding its implementation or constitutionality." (*Id.* p. 16, ¶¶ 56-57.) But another deponent *directly contradicted* this assertion by Branch. Salt Lake County Sheriff Winder testified that he attended "several community meetings during the development of the SB81 process [where he] believe[d] either Mr. Branch or someone from ICE was there." (Winder Dep., 59:3-6, Ex. 4.) He admitted, further, to having spoken with Defendant Branch about SB 81. (*Id.* 58:12-25.) Defendants similarly admit that they were "generally aware

6

of the existence of SB 81[.]" (RFA Resp. No. 7, Ex. 3.) These blatant contradictions open up important matters for deposition testimony. Mr. Uroza will use the ensuing testimony to bolster his claims even more against Defendants' spurious challenge.

17. According to Defendants, after it issues an I-247 detainer, "ICE generally has no further contact with a facility regarding the inmate until that facility determines that their inmate is eligible for release." (Def. Br., Dkt. 108, p. 6, ¶ 8.) Again, this assertion contradicts others' deposition testimony. Sheriff Winder testified that Salt Lake County and ICE were in contact on a regular basis with respect to prisoners. (Winder Dep., 56:17-22, Ex. 4.) This issue underlies Mr. Uroza's conspiracy claim, yet without depositions, Mr. Uroza cannot fully challenge these assertions by Defendants.

18. Defendants allege that no "ICE Employee is aware of Salt Lake County ever holding a detainee more than two business days past the County's first notice to ICE of the detainee's impending release." (Def. Br., Dkt. 108, p. 7, ¶ 12.) But there is evidence that Salt Lake County regularly held subjects of I-247 detainers until ICE picked them up. (Winder Dep. 94:23-95:1, 98:2-9, Ex. 4 ("ICE sometimes ha[s] difficulty taking custody of people in a timely manner because of personnel limitations or any other reason" and the County "feel[s] it's [its] obligation, for whatever reason, when people have indicated a desire to hold on to a particular individual[.]").) Mr. Uroza needs to depose Defendants on this subject.

19. Several phone conversations took place on July 22, 2011 regarding the state court's order releasing Mr. Uroza. Those discussions addressed whether or not to release Mr. Uroza. Defendants Mathis and Cordero admit that they participated on these calls. But neither set forth with specificity the subject matter of the calls—including who said what, and when. Nor do

they explain why those on the calls decided to ignore the state court order and take Mr. Uroza into custody. (Def. Br., Dkt. 108, ¶¶ 35, 45.) This directly evidences communications between alleged conspirators, yet Mr. Uroza has not yet had the opportunity to depose Defendants Mathis and Cordero regarding the details of the conversation. This is of the utmost importance to Mr. Uroza's conspiracy claim.

20. Finally, as to Defendants' claims that they did not conspire "with anyone to illegally detain Uroza[,]" and that there was "[n]o ICE Employee took any action with regard to Uroza with discriminatory animus toward Uroza or toward Hispanics generally[,]" it is clear that any direct evidence contradicting these assertions is within Defendants' exclusive knowledge. (Def. Br., Dkt. 108, ¶¶ 16, 17.) Furthermore, the qualifiers "generally" and "toward Uroza" invite their own questions. As Mr. Uroza explains in his contemporaneously filed opposition brief, direct evidence of improper motive or an agreement to violate a plaintiff's constitutional rights is rare in conspiracy cases. Although Mr. Uroza has ample circumstantial evidence of conspiracy, he needs to depose Defendants to test their bare-bones assertions that there was no conspiracy or animus to deprive Mr. Uroza of his rights.

**Ghostwriting**:

21. Defendants' declarations are conspicuously homogeneous. Identical or nearly exact assertions permeate the statements of four purportedly distinct declarants, inviting the inference that the proffered declarations are unreliable. Mr. Uroza will scrutinize Defendants on the knowledge underlying their assertions, and expects to secure testimony that will undermine and impeach many of the asserted "facts" in those declarations.

**The Declarations Are Conclusory**:

22. Defendants' declarations set forth conclusory statements that purport to contradict Mr. Uroza's allegations. Yet, Defendants ask the Court to believe that they did not conspire and that they had probable cause to arrest Mr. Uroza. Each Defendant states that they had probable cause and that they did not conspire, without delving into the basis for these determinations. In deposition, Mr. Uroza's counsel will explore the bases for Defendants' conclusory assertions, and expect that ensuing admissions will undermine the validity of Defendants' claims.

23. Based on the above, to present evidence to oppose the motion for summary judgment, Mr. Uroza will seek to depose:

    (a) Defendant Jordan Reddish,

    (b) Defendant Robert Cordero,

    (c) Defendant Steve Branch, and

    (d) Defendant Marshall Mathis.

### Mr. Uroza Has Taken Previous Steps Taken to Secure These Facts

24. Mr. Uroza has diligently litigated this case.

25. My colleagues Alfred Carroll Pfeiffer, Jr., Charles F. Taylor, Kyle A. Mitchell Virgien, Danielle A. Kendrick and I filed notices of appearance on behalf of Mr. Uroza on July 23, 2013. (Dkt. 66-70.) We filed a protective order on behalf of Mr. Uroza 8 days later, which the Court granted in full on February 20, 2014. (Dkt. 71, 110.)

26. Two weeks after appearing, Mr. Uroza's undersigned counsel served discovery on Federal and County Defendants requesting a significant number of documents. Federal Defendants asked for an extension to produce documents both as a result of the government

shutdown on September 30, 2013, eventually responding to Mr. Uroza's requests on October 25, 2013. Mr. Uroza agreed, filing a joint motion to amend the Scheduling Order to allow Mr. Uroza time to include the Federal Defendants' production and responses in the Third Amended Complaint. (Dkt. 76, 83.) As a result of this discovery, Mr. Uroza identified the ICE officer who had issued the I-247 immigration detainer against Mr. Uroza—"John Doe 51"—to be Jordan Reddish. He also learned that ICE officer Robert Cordero was a previously named John Doe who had caused ICE to take Mr. Uroza into custody after the state court ordered him released.

27. On November 6, 2013, Mr. Uroza's counsel emailed Defendants' counsel in order to set depositions for several witnesses, including the deposition of Jordan Reddish, whom the Second Amended Complaint named as a Defendant as "John Doe 51." (Nov. 6, 2013 Email fr. A. Devlin to C. Baker, Ex. 5.) The parties scheduled Defendant Jordan Reddish's deposition for December 5, 2013.

28. On November 19, 2013, the parties deposed Robin Lopez, who posted bail on Mr. Uroza's behalf. Two weeks later, Mr. Uroza deposed Sheriff Winder, who was responsible for enacting Salt Lake County Metro Jail's S.B. 81 policy.

29. In a timely manner under the Scheduling Order, Mr. Uroza filed a Motion for Leave to file a Third Amended Complaint on November 27, 2013, identifying Defendants Jordan Reddish and Robert Cordero, dropping former defendants Janet Napolitano and John Morton as per the Court's February 2013 Order, and adding facts based on recently obtained discovery. (Dkt. 87.)

30. Even though Jordan Reddish was named as John Doe 51 in the Second Amended Complaint, Federal Defendants' counsel cancelled Defendant Reddish's deposition on November

26, 2013, when Mr. Uroza informed defendants that he would add Jordan Reddish and Robert Cordero as parties. (Nov. 26, 2013 Email fr. K. Daeubler to A. Devlin, Ex. 6.)

31.     On December 19, 2013, counsel for Branch and Mathis in their individual capacities asked Mr. Uroza to extend their time to answer the Third Amended Complaint, even though both had been named in the Second Amended Complaint. (Dec. 19, 2013 Email fr. A. Berndt to D. Kendrick, Ex. 7.) Mr. Uroza agreed to the extension.

32.     On January 28, 2014, County Defendants' counsel emailed Mr. Uroza's counsel, asking whether Mr. Uroza would stipulate to a motion for extension of the existing March 10, 2014 discovery deadline to correspond with the date the Court resolved an earlier Protective Order. (Jan. 28, 2014, Email fr. D. Hansen to A. Devlin, Ex. 8.) County Defendants explained that they would have difficulty scheduling depositions before the current March 10th deadline. (*Id.*) Mr. Daniel Price, counsel for Individual Federal Defendants, expressed the view that "newly named individual defendants [should not] . . . be subject to discovery prior to their answers." (Feb. 6, 2014 Email fr. D. Price to A. Devlin, Ex. 9.) Federal Defendants and Mr. Uroza ultimately agreed to join the motion, and the Stipulated Joint Motion to Amend Scheduling Order was filed February 18, 2014. (Dkt. 107). The Court granted the Motion, effectively moving the discovery cutoff date to 60 days after Defendants answer the Third Amended Complaint. (Dkt. 111).

33.     In the meantime, Federal Defendants filed a Partial Motion to Dismiss for Lack of Jurisdiction on January 16, 2014. (Dkt. 104.) Defendants filed the instant Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment, on February 18, 2014. (Dkt. 109.) Three days later, Mr. Uroza's counsel reached out to Defendants' attorneys, explaining that Rule

11

56(d) plainly foreclosed their motion. (Feb. 21, 2014 Email fr. A. Devlin to D. Price, Ex. 10.) Mr. Uroza's counsel asked that Defendants withdraw their motion and offered, in the alternative, to stipulate to the Court's holding their motion in abeyance until the close of discovery. (*Id.*) Defendants declined. Responding to these motions has consumed a significant amount of Mr. Uroza's lawyers' time.

34. Mr. Uroza intends to depose Defendants Branch, Mathis, Cordero and Reddish before the close of fact discovery, and on March 16, 2014, Mr. Uroza's counsel emailed Federal Defendants' counsel to schedule the depositions of the Federal Defendants in their individual capacities. (Mar. 16, 2014 Email fr. A. Devlin to D. Price, Ex. 11.) Mr. Uroza still awaits a response.

### **Additional Time Will Enable Mr. Uroza to Rebut Defendants' Allegations**

35. Mr. Uroza wishes to schedule Defendants' depositions, but has been thwarted in his efforts thus far. Mr. Uroza needs to depose Defendants Reddish, Mathis, Cordero and Branch to unearth critical evidence supporting his unconstitutional arrest and conspiracy claims, and to provide complete evidence to respond in full to Defendants' motion. Mr. Uroza maintains that these depositions will be taken by the close of discovery, which will be 60 days from when Defendants answer the Third Amended Complaint. At that point, Mr. Uroza will be ready to respond in full to any summary-judgment motion. Indeed, he will move for summary judgment on his own claims against defendants on a variety of his claims.

36. For these reasons, Mr. Uroza respectfully asks the Court to grant Plaintiff Enrique Uroza's Rule 56(d) Motion to Deny or Continue Defendants Branch, Cordero, Mathis and Reddish's Motion for Summary Judgment.

37.     I declare under penalty of perjury that the foregoing is true and correct.

Dated this 21st day of March, 2013                /s/ Alan J. Devlin
                                                                   Alan J. Devlin (admitted *pro hac vice*)
                                                                   LATHAM & WATKINS LLP
                                                                   505 Montgomery Street, Suite 2000
                                                                   San Francisco, California  94111-6538
                                                                   Telephone: 415-391-0600
                                                                   Facsimile: 415-395-8095
                                                                   alan.devlin@lw.com

                                                                   **One of the Attorneys for Plaintiff
                                                                   ENRIQUE UROZA**