# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| ENRIQUE UROZA,<br><br>      Plaintiff,<br><br>vs.<br><br>SALT LAKE COUNTY, et al.,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:11CV713DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on three motions: (1) Defendants the United States of America, Steven Branch, Jordan Reddish, and Marshall Mathis's ("Federal Defendants") Partial Motion to Dismiss Third Amended Complaint; (2) Defendants Steven Branch, Marshall Mathis, Jordan Reddish, and Robert Cordero's ("Individual Federal Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint and for Summary Judgment; and (3) Plaintiff Enrique Uroza's Rule 56(d) Motion to Deny or Continue Motion for Summary Judgment. On August 14, 2014, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Kyle A. Virgien and John Mejia, the Federal Defendants were represented by Kirsten L. Daeubler, and the Individual Federal Defendants were represented by Amanda A. Berndt. The court took the mattions under advisement. After carefully considering the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions, the court renders the following Memorandum Decision and Order.

# BACKGROUND

On June 13, 2012, Enrique Uroza, a 22-year-old college student, appeared in Utah State Court to face criminal allegations. The court set bail and remanded Uroza to SLC Metro Jail for processing. Uroza was booked into custody and posted bail ten minutes later. When Uroza posted bail, no lawful process had been issued against Uroza that would have justified his continued detention. Nevertheless, pursuant to County policy, the County Defendants continued to hold Uroza while they contacted federal immigration officials.

The following day, June 14, 2011, ICE Agent Jordan Reddish interviewed Uroza at the SLC Metro Jail and then issued a hold request against Uroza. This hold request was on a Form I-247, which requested SLC Metro Jail to "maintain custody of the subject for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject." The Form I-247 requested that SLC Metro Jail continue to detain Uroza because ICE has "initiated an investigation to determine whether this person is subject to removal from the United States."

After receiving ICE's "hold request," County officials continued to detain Uroza. By its own terms, ICE's hold request expired on June 16, 2011, 48 hours after it was lodged. Uroza, however, was not released despite having already posted bail. On June 16, 2011, when his Form I-247 expired, nobody from ICE went to SLC Metro Jail to acquire custody of him. Uroza claims that the Federal Defendants should have known that the County Defendants routinely kept individuals like Uroza in custody even if the ICE "hold request" had expired.

Based on the issuance of the Form I-247, Uroza was detained in County custody another

36 days.  Uroza moved the state court presiding over his criminal case to order the County officials to release him.  On July 21, 2011, five weeks after Uroza had posted bail, the State Court heard Uroza's motion and ordered him to be released from custody immediately.

Despite the State Court's ruling, the County officials did not release Uroza.  Defendant James Winder publicly stated that Salt Lake County would "continue to hold the inmate . . . until a federal judge orders his release or [ICE] removes the detainer it has placed on him."  Winder advised the press that he believed he was complying with ICE policy and practice by continuing to hold Uroza after the hold request expired.

On July 22, 2011, 39 days after he posted bail, the County released Uroza from its custody and turned him over to Defendant Mathis, an ICE agent.  Uroza was turned over to ICE even though the state court judge ordered from the bench that the County should not turn Uroza over to ICE.

Uroza alleges that it is the policy and practice of requesting local law enforcement agencies, like Salt Lake County, to imprison individuals so that ICE can investigate the individual's immigration status.  Form I-247 allows ICE agents to request local law enforcement agents to imprison people without stating probable cause for such detention: the one stated ground for a "hold request" on Form I-247 is that ICE is investigating whether an individual may be removed from the United States.

Although an ICE agent issued the Form I-247 on June 14, 2011, an ICE agent did not come and place Uroza in ICE custody until July 22, 2011.  On that day, Uroza was transported to an ICE detention facility in Spanish Fork, Utah.  Uroza was held at the detention facility until July 24, 2011, without a hearing or an opportunity to post bail.

On July 25, 2011, ICE agents transported Uroza to Salt Lake City for a hearing before ICE Agent Jesus Padilla. At the hearing, Agent Padilla deemed Uroza eligible for bail, which was set and later lowered to $2,500. Uroza and his family raised the money and posted bail on July 28, 2011. Uroza is no longer in custody.

Uroza brought the present lawsuit as to the legality of his detention at the Salt Lake County Metro Jail and an ICE Detention facility, which he claims was unconstitutionally prolonged due to the Form I-247 issued by the Immigration and Customs Enforcement ("ICE"). Uroza asserts five causes of action against the Federal Defendants: wrongful imprisonment and negligence against the United States under the Federal Tort Claims Act; a *Bivens* claim against each individually named Federal Defendant for violations of his Fourth and Fifth Amendment rights; a declaratory judgment claim against the individually named Federal Defendants; and a conspiracy claim against the individually named Federal Defendants.

This court already denied a motion to dismiss brought by the Federal Defendants. The court held that Uroza had adequately pleaded a Section 1985 conspiracy claim and that there were questions of fact as to whether the individual defendants were entitled to qualified immunity. Through written discovery, Uroza was able to identify two of the ICE agents involved in this case. Accordingly, he amended his complaint to add these individuals. Uroza, however, has not been able to depose any of the individual Federal Defendants.

**DISCUSSION**

The Federal Defendants' Partial Motion to Dismiss seeks to dismiss Uroza's declaratory judgment claim and his request for injunctive relief. The Individual Federal Defendants' Motion to Dismiss and Motion for Summary Judgment asks the court to: (1) dismiss Uroza's Section

4

1985 conspiracy claims as to all the individually named plaintiffs for failure to plead facts to plausibly support a claim that the individual Federal Defendants were motivated by discriminatory animus; and (2) grant summary judgment to the individual Federal Defendants based on qualified immunity. In response to the Individual Federal Defendants' Motion for Summary Judgment, Uroza filed a Rule 56(d) motion for further discovery.

## **Federal Defendants' Partial Motion to Dismiss**

The Federal Defendants argue that this court lacks jurisdiction over Uroza's equitable claims. Uroza's fifth claim for relief seeks declaratory judgment that the use of Form I-247 without first establishing probable cause violates the Fourth and Fifth Amendments to the United States Constitution. In this claim, Uroza also seeks an injunction prohibiting ICE from issuing Form I-247 hold requests without probable cause to believe that the alien had violated immigrations laws and was a flight risk.

The Federal Defendants assert that Uroza lacks standing to seek an injunction because he has not been subject to an immigration detainer since 2011 and he has not alleged that there is any likelihood that he will be subject to an immigration detainer in the future. Second, the Federal Defendants argue that Uroza's declaratory judgment claim against the use of the Form I-247 is moot because ICE no longer uses the Form I-247 that was in use when Uroza was detained.

1. **Fifth Amendment Due Process Claim**

As an initial matter, the Federal Defendants ask that Uroza's Fifth Amendment Claim be dismissed because it is based on the same facts as his Fourth Amendment claim and his Fourth Amendment claim provides him more specific guarantees. The Federal Defendants assert that

this court should analyze Uroza's claim under the contours of the Fourth Amendment's prohibition against unlawful seizures, rather than the Fifth Amendment's guarantees of due process, and dismiss Uroza's Fifth Amendment claim.

In *Graham v. Connor*, the Supreme Court declared that where the Fourth Amendment "provides an explicit textual source of constitutional protection" against a particular form of government behavior, "that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims." 490 U.S. 386, 395 (1989).

However, in this case, Uroza alleges that the Federal Defendants violated his Fourth Amendment rights in issuing an I-247 against him without first conducting a probable cause investigation. Uroza also alleges that the Federal Defendants violated his Fifth Amendment right to procedural due process by subjecting him to prolonged detention without any basis for doing so. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Freedom from imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that Clause [referring to Fifth Amendment Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Federal Defendants argue that the Tenth Circuit has applied *Graham v Connor* in the procedural due process context in *Becker v. Kroll*, 494 F.3d 904, 918-19 (10th Cir. 2007). However, *Becker* involved a claim by a neurologist who was investigated but never arrested, an administrative subpoena to inspect the neurologist's medical records which was not subject to constitutional probable cause requirements, and the instigation of criminal charges without probable cause, which the court treated as a malicious prosecution claim. *Id.* at 914-16. The

*Becker* court explained that "[s]everal cases suggest that at some point in the prosecutorial process, due process concerns can be sufficient to support a claim under § 1983." *Id.* at 920. The court recognized that in a prior malicious prosecution case it had determined that it was "not necessary . . . to determine where Fourth Amendment analysis ends and due process analysis begins because [the plaintiff] raised claims under both constitutional provisions." *Id.* "By contrast, the difference in standards does matter to Becker's appeal, because, unlike, [the prior plaintiff], she was never arrested in violation of the Fourth Amendment." *Id.* The *Becker* case differs factually in so many significant respects that the court does not find the Federal Defendants' reliance on it to be persuasive or helpful. In fact, the court finds that the *Becker* decision suggests that physical liberty deprivations can implicate due process concerns as well as Fourth Amendment concerns.

In this case, Uroza alleges that the Form I-247 was issued without probable cause and after he had posted bail, the review of his case did not come within the 48 hours specifically identified on the Form, and he was then detained for 43 additional days without receiving any process. The court concludes that Uroza has stated a specific procedural due process claim that is separate and apart from his Fourth Amendment probable cause claim. The Federal Defendants' cases do not apply in this context. Therefore, the court finds no basis for dismissing Uroza's Fifth Amendment claim.

**2. Standing to Seek an Injunction**

At the center of the standing requirement is the clear mandate that a plaintiff must allege personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and that can likely be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 751 (1984). To

establish that he has suffered an injury in fact, Uroza must show "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual and imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To seek injunctive relief, Uroza must also show that he is likely to suffer the same injury in the future if the court does not grant the requested injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1993).

In *Lyons*, the plaintiff alleged that police officers stopped him and injured him by subjecting him to a chokehold without justification and that officers in the city regularly applied such chokeholds pursuant to the authorization and instruction of the City. *Id.* at 98. The plaintiff sought declaratory judgment that the use of chokeholds absent proper justification was a per se violation of constitutional rights and an injunction barring the city officers from using chokeholds absent justification. *Id.* The Supreme Court concluded that the plaintiff lacked standing to obtain injunctive relief because of the "speculative nature of his claims that he will again experience injury as a result of that practice even if continued." *Id.* at 109 ("If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October, 1976, then he has not met the requirements for seeking an injunction in federal court.")

After *Lyons*, several federal courts have held that the victim of an established government policy can sue to enjoin that policy even of he would not again be subject to it unless arrested once more. *Lyons*, itself, held that plaintiffs lack standing to enjoin incredible or unbelievable policies that do not pose a realistic threat to them. The Court thought it "incredible" that LAPD officers always choked citizens they encountered or that the City authorized them to act in that manner. *Id.* at 106. The plaintiff also did not "credibly allege that he faced a realistic threat from

8

the future application of the City's policy." *Id.* at 106 n.7.

Neither such shortcoming applies to Uroza. Uroza does not challenge a sporadic practice like the one in *Lyons*, but an established governmental policy. When a foreign-born person lacking proof of status enters Salt Lake County jail custody, it is not speculation but a near certainty that the jail will notify ICE, ICE will issue a detainer, and the jail will honor the detainer to extend the person's incarceration.

ICE subsequently changed the language of its form, but not its practice of issuing the Form I-247 without first conducting an investigation as to immigration status and flight risk. Uroza alleges that federal agents still do not undertake a factual investigation sufficient to provide probable cause as to immigration status before issuing the form. Rather, federal agents merely rely on perceived national origin or ethnicity in deciding to issue the form. Between 2008 and 2012, ICE issued detainers against more than 800 U.S. citizens and 28,000 legal permanent residents.

While it was conjecture for the plaintiff in *Lyons* to claim that the LAPD would act unconstitutionally "in every instance of a traffic stop, arrest, or other encounter," it is a near certainty that the Federal Defendants will continue to issue detainers without probable cause and based only on perceived national origin or ethnicity. As Uroza's experience shows, a traffic violation or missed court hearing can result in a stint at SLC Metro, which triggers the Form I-247 process. SLC Metro asks every person who comes in whether they were born in the United States. If a person says no or lacks documentation, SLC Metro always sends that person's booking sheet to the Federal Defendants. ICE then issues an I-247 detainer as a matter of routine without first determining probable cause and flight risk. Therefore, an unconstitutional arrest

will occur.

The only question is whether Uroza will pass through SLC Metro's doors again. Post-*Lyons* decisions make clear that a person has standing to enjoin a government policy if the uncertainty is merely whether the person will be arrested again. Uroza need not break the law to end up in this situation again; a police officer need merely think he did. He remains vulnerable to being the subject of an I-247 detainer again, not least because he was subject to one before.

In *Morales v. Chadbourne*, 2014 WL 554478, at *14-15 (D.R.I. Feb. 12, 2014), a naturalized United States citizen, who had twice had I-247 detainers issued against her that prolonged her stays in local custody, was found to have standing to seek an injunction halting the unlawful use of detainers against her. The court explained that Morales had standing because she set forth "plausible allegations that the threat of a repeat, unlawful detention is realistic." Several post-*Lyons* cases have found standing in similar circumstances. *See, e.g., Mack v. Suffolk County*, 191 F.R.D. 16, 20 (D. Mass. 2000); *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 793 F. Supp. 2d 1317 (N.D. Ga. 2011).

Based on these cases, Uroza meets the Tenth Circuit standard that "a plaintiff's continued susceptibility to injury must be reasonably certain." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011). Unlike a misapplied chokehold, Uroza claims that the I-247 detainer process is certain to be applied against him again if he has any future interaction with the police. Therefore, the court concludes that he has standing to seek an injunction.

The Federal Defendants further assert that Uroza's request for an injunction is improper because he has not sued ICE or its Director, which would be necessary to affect ICE-wide policies and practices. The Federal Defendants fail to recognize that they previously sought

dismissal for these same parties. To now claim that they are necessary to the action is nearly duplicitous. Nonetheless, Uroza has named the United States of America and can affect ICE-wide policies and practices of one of its agencies. An injunction against the United States would be applied to the appropriate agency.

### 3. Declaratory Judgment Claim

Uroza's declaratory judgment claim requests "[a] judicial determination that ICE's policy and practice of issuing 'hold requests' in the absence of probable cause, and in particular merely to investigate a person's immigration status . . . violates the Fourth and Fifth Amendments." The Federal Defendants argue that any claim for declaratory judgment that Uroza may have had against the Federal Defendants is moot because he is no longer subject to an immigration detainer and, even if he could be subject to an immigration detainer in the future, ICE has changed the form and it not longer contains the "investigation has been initiated" language that he challenges. The Federal Defendants assert that Uroza's declaratory judgment claim is both constitutionally moot and prudentially moot.

*(A) Constitutional Mootness*

"Where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Jordan*, 654 F.3d at 1025. The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A plaintiff must seek "more than a retrospective opinion that he was wrongly harmed by the defendant." *Jordan*, 654 F.3d at

1025.

The Federal Defendants claim that Uroza cannot plausibly allege any facts to show that the declaratory judgment he requests would affect ICE's behavior toward him. Uroza has not been subject to an immigration detainer since the incident at issue in this case, which happened in 2011. The Federal Defendants argue that declaratory judgment would not change the conduct of the specific ICE defendants, but their argument fails because Uroza seeks declaratory judgment against the United States and the United States has waived its immunity with respect to claims for equitable relief from agency action. DHS and ICE are agencies of the United States and their actions gave rise to Uroza's unlawful detention. The United States is subject to equitable and declaratory relief.

The court has already properly held that Uroza has stated a claim for declaratory relief against Mathis, Reddish, and Cordero (the last two were identified as John Does at the time). The factual allegations remain unchanged and the Federal Defendants failed to file a motion for reconsideration. In fact, the Federal Defendants were successful in their first motion in getting the ICE Director dismissed but now argues the ICE Director is the only proper party. The United States is sufficient.

In addition, an exception to mootness exists for those cases that are "capable of repetition yet evading review." *Lyons*, 461 U.S. at 109. The Tenth Circuit has explained that his exception applies only "in exceptional circumstances." *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008). Outside the class action context, this exception is limited "to the situation where two elements combine: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation

that the same complaining party [will] be subjected to the same action again." *Jordan*, 654 F.3d at 1035.

This case fits precisely in the *Lyons* exception. ICE issues hundreds of thousands of detainers each year but the prolonged detention is never long enough to get legal review while it is actually happening. If the court accepted the Federal Defendants arguments, the Federal Defendants would be judgment proof. As discussed above with respect to standing, *Morales* and other courts have found that Uroza and others like him face a real risk of being subject to the policy again in the future. Therefore, Uroza meets both prongs for the exception.

The Federal Defendants further argue that Uroza cannot again be subject to a detainer containing the language he challenges because the language of the form has changed. The detainer issued against Uroza stated that an investigation has been initiated to determine whether the person was subject to removal from the United States. ICE's current detainer does not use this language.

However, even if language of the current detainer demonstrates probable cause, Uroza alleges that ICE's practice of issuing the Form I-247 without first conducting an investigation as to immigration status and flight risk has not changed. Uroza alleges that federal agents still do not undertake a factual investigation sufficient to provide probable cause as to immigration status before issuing the form. Rather, federal agents merely rely on perceived national origin or ethnicity in deciding to issue the form. Based on these allegations, the change in the language on the form does not make Uroza's claim moot.

(B) Prudential Mootness

Even if the case is not constitutionally moot, a court may nevertheless decline to consider

a case under the doctrine of prudential mootness. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1248 (10th Cir. 2008). Generally, the doctrine of prudential mootness operates only where a plaintiff seeks injunctive or declaratory relief. *Jordan*, 654 F.3d at 1024. Prudential mootness is a matter of discretion for the court.

In considering Uroza's claim under prudential mootness, the Federal Defendants argue that declaratory judgment in Uroza's favor would not resolve the controversy before the court, would not clarify the legal relations at issue, and damages are a better form of relief in these circumstances. The factors relied on by the Federal Defendants actually highlight the importance of allowing Uroza to seek his requested declaratory relief. The principal question in this case is whether a constitutional right has been violated. A damages award would not change the I-247 policy, and Uroza would remain at risk of a prolonged detention because of that policy. Therefore, damages alone would not resolve the controversy. If the current practice is truly unconstitutional, the best remedies to fix that policy are declaratory judgment and injunctive relief. Therefore, the court does not believe that the case is prudentially moot. Accordingly, the court denied the Federal Defendant's motion to dismiss.

**Individual Federal Defendants' Motion to Dismiss and For Summary Judgment**

The Individual Federal Defendants' Motion to Dismiss and Motion for Summary Judgment asks the court to: (1) dismiss Uroza's Section 1985 conspiracy claims as to all the individually named plaintiffs for failure to plead facts to plausibly support a claim that the individual Federal Defendants were motivated by discriminatory animus; and (2) grant summary judgment to the individual Federal Defendants based on qualified immunity. In response to the Individual Federal Defendants' Motion for Summary Judgment, Uroza filed a Rule 56(d) motion

for further discovery.

In the court's prior Memorandum Decision and Order on a motion to dismiss Uroza's Second Amended Complaint, the court already ruled that the Complaint adequately states a conspiracy cause of action. The filing of the Third Amended Complaint did not change the relevant allegations. The new Complaint merely added the names of ICE officers who were previously unknown. The court continues to believe that Uroza has stated sufficient facts, which accepted as true, state a plausible conspiracy claim. Therefore, the court concludes there is no basis for revisiting its prior decision. Accordingly, the Individual Federal Defendants' motion to dismiss Uroza's conspiracy claim is denied.

In addition, the Individual Federal Defendants bring a motion for summary judgment raising a qualified immunity defense when the court previously ruled that there are questions of fact related to qualified immunity. The Individual Federal Defendants ask the court to accept new information contained in the defendants' declarations which would support the application of qualified immunity. Uroza, however, contends that he should be entitled to depose the Individual Federal Defendants to test the assertions made in the declarations.

The court agrees with Uroza. There are substantial questions raised in the Complaint with respect to what information the Individual Federal Defendants had regarding Uroza's situation and what conversations took place with Salt Lake County officials as to his custody and detention. The deposition of Salt Lake County Sheriff James Winder also raises questions of fact with respect to the Individual Federal Defendants' knowledge and actions. Certain aspects of Sheriff Winder's deposition contradict the Individual Federal Defendants' declarations. Uroza is entitled to resolve these questions through deposing the Individual Federal Defendants and any

relevant county officers he has not yet been able to depose. The court recognizes that qualified immunity is to be determined as early as possible, but the same fact questions that existed in connection with the court's prior ruling continue to exist because no depositions have been taken. The court finds no basis for granting summary judgment based on untested declarations that contradict other discovery taken in the case. The parties must engage in discovery before the court can properly decide the qualified immunity questions. Accordingly, the court grants Uroza's Rule 56(d) motion and denies the Individual Federal Defendants' motion for summary judgment.

## CONCLUSION

Based on the above reasoning, the Federal Defendants' Motion to Dismiss is DENIED; the Individual Federal Defendants' Motion to Dismiss and for Summary Judgment is DENIED; and Uroza's Rule 56(d) Motion is GRANTED.

DATED this 10th day of September, 2014.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge